IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

AARON D. MANNING,

    Petitioner,

vs.

ROBERT HOUSTON, Director,
Nebraska Department of Corrections

    Respondent.

4:12CV3102

**MEMORANDUM AND ORDER**

This matter is before the court on Aaron Manning's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, Filing No. 1. Manning challenges his conviction under a plea of *nolo contendere* in the District Court of Buffalo County, Nebraska. *Id*. Manning contends that his conviction should be vacated or set aside, because the State of Nebraska violated his United States Constitutional rights. *Id*.

BACKGROUND

A. SUBSTANTIVE CRIME AND EVIDENCE OF RELATED ACTIVITY

This case arises out of incidents pertaining to Aaron Manning's attack on two individuals. *See* Filing No. 9 (stating the Nebraska Court of Appeals' recitation of the facts). Aaron D. Manning ("Manning"), the petitioner, and Jim Haga ("Haga") were close friends. Filing No. 7-4 at 3. On Halloween night in 2004, Manning, dressed as a surgeon, went to a house where Haga's wife and child resided. *Id*. Manning cut the wife and daughter's necks and throats and the daughter's face with a scalpel. Filing No. 9 at p. 1-2. The attack stopped only after the daughter stabbed Manning with a knife, causing Manning's surgical mask to fall off and allowing the victims to identify him. *Id*.

at p. 2. Both victims lived, although "a doctor would have testified that the cuts were within millimeters of hitting either their jugular veins or carotid arteries." *Id.*

Around the time of Manning's attack, Haga had been accused of sexually molesting his daughter. Filing No. 1, Attachment 2, p. 13. On the same evening that Manning attacked the victims, one of Deb Haga's friends had "two men, one dressed in a ghillie suit and one dressed all in black come to her front door in Kearney, Nebraska and ask who was home." Filing No. 1, Attachment 2, at p. 14. The friend, Ginger Axtell, often spent Halloweens with the victims in this case. *Id.* The two men left after learning that no one other than Axtell and Axtell's grandson were home. *Id.* Deb Haga later received a letter threatening retaliation for her role in Haga's molestation case. Filing No. 7-4 at p. 4. Manning claims that he learned of these facts between July 2009 and January 11, 2011.[1] Filing No. 12 at p. 2.

B. PROCEDURAL HISTORY

The District Court of Buffalo County convicted Manning of two Class 2 felonies after Manning entered a plea of *nolo contendere*. Filing No. 7-13 at p. 4-5 (explaining that the conviction came from Manning pleading guilty to two counts of attempted murder in return for the State dismissing two counts of using a weapon to commit a felony). The district court then sentenced Manning on August 19, 2005, to a minimum of forty years and a maximum of fifty years. Filing No. 1 at p. 1. Manning appealed his conviction to the Nebraska Court of Appeals on September 16, 2005. *Id.* at p. 2; Filing

---

[1] It is unclear exactly what facts were learned and when they were learned, but it appears from emails sent to Manning's attorney that Manning learned of the threatening letter to Ginger Axtell and email communications between Ginger Axtell and Kearney Police Department investigators sometime between March of 2009 and December of 2010. *See* Filing No. 7-12 at p. 21-30 (showing emails forwarded to Manning's attorney in December of 2010, but beginning with "here's the first in a series of email I forwarded to you back in 09. . . .").

No. 7-10 at p.1. The court dismissed the appeal on December 19, 2005, and Manning did not seek further review. Filing No. 7-1 at p. 2; *see* Filing No. 1 at p. 6 (explaining that Manning dismissed his appeal because his attorney withdrew as counsel).

Manning, however, twice moved for post-conviction relief in the District Court of Buffalo County, Nebraska. Filing No. 1 at p. 3-4. The district court dismissed the first motion for post-conviction relief, filed on July 30, 2009, on its own motion. *Id.* at 3. Manning moved to amend the pleading and a motion to vacate the judgment, but the court denied his motion. *Id.*; *see* Filing No. 7-4 at p. 3 (explaining Manning's post-dismissal steps). Manning appealed the order denying the motion to amend, but the Nebraska Court of Appeals affirmed the District Court of Buffalo County. Filing No. 7-2 at p. 2.

In the second motion for post-conviction relief, filed on January 27, 2011, the district court determined that Manning raised similar issues in his prior motion for post-conviction relief and dismissed the second motion. Filing No. 7-12 at p. 31. Manning moved for further review by the Nebraska Court of Appeals, who summarily affirmed the District Court on August 15, 2011. *Id.*; Filing No. 7-3 at p. 2. Manning sought review by the Supreme Court of Nebraska on September 14, 2011. Filing No. 7-3 at p. 2. The Supreme Court of Nebraska denied the motion for further review on September 21, 2011*. Id.*; *see* Filing No. 1 at p. 5, 12 (explaining that Manning sought review by the highest state court). Manning then filed his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 on May 22, 2012. *Id.* at p. 1.

3

In his petition, Manning set forth eight claims with various sub-parts. *See* Filing No. 3 at p. 2-3. This court found that of the eight claims, seven were potentially cognizable in federal court. *Id.* The claims included:

> "**Claim One:**
> The petitioner was denied due process of law because the petitioner was not notified of his Constitutional rights and was in custody or under arrest when the petitioner made incriminating statements;
> See Filing No. 1 - Petition Attachment Two p. 11 ¶ 9.
> **Claim Two:**
> The petitioner was denied due process of law because law enforcement continued questioning the petitioner after the petitioner repeatedly indicated he did not want to make a statement until his attorney was present;
> *Id.* at 11 ¶ 10.
> **Claim Three:**
> The petitioner was denied effective assistance of counsel in violation of the Sixth Amendment because the petitioner was not adequately advised of the parameters of the plea agreement;
> *Id.* at 11 ¶ 11.
> **Claim Four:**
> The petitioner was denied due process of law, effective assistance of counsel, and the right to confront witnesses, because the petitioner was denied access to exculpatory evidence as referenced in attachment two of the Petition;
> *Id.* at 12 ¶ 12.
> **Claim Five:**
> The petitioner's right to confrontation was violated because he was unable to discuss or review his pre-sentence investigative report to enable him to add or subtract information from the sentencing judge;
> *Id.* at 17 ¶¶ 13, 15.
> **Claim Six:**
> The petitioner was not made aware of information that should be added to the presentence investigative report because the county attorney did not comply with discovery;
> *Id.* at 17 ¶ 14.
> **Claim Seven:**
> The petitioner was denied his right to counsel due to ineffectiveness of counsel because:
> > A. The petitioner was denied the right to read and review the pre-sentence investigative report;
> > B. The petitioner's trial counsel was ineffective by failing to preserve the record and issues necessary for a direct appeal or to aide or assist in the filing of an appeal prior to withdrawing;

4

> C. . . .[2]
> D. The petitioner's trial counsel was ineffective for not providing the petitioner the right to attend depositions;
> E. The petitioner's trial counsel neither researched or investigated the petitioner's haziness prior to and during the assaults nor the fact that Jim Haga could control the petitioner with hypnotism.
> *Id.* at 17 ¶ 16."

See Filing No. 3 at p. 2, 3.

## DISCUSSION

Manning filed his habeas corpus petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2241-54. Under the AEDPA, an application for writ of habeas corpus can be granted on a claim that was adjudicated on the merits in state court only if the adjudication either resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2).

A. CLAIMS ONE, TWO, THREE, FIVE, AND SEVEN

Manning claims the State of Nebraska violated his Fifth Amendment due process rights, Sixth Amendment right to counsel, and his rights under the Confrontation Clause. A one-year statute of limitations applies "to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The determination of when the statute of limitations begins to run is as follows:

> (d)(1) . . .
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[2] The court ruled that this part of Claim Seven was not cognizable by the federal court.

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

28 U.S.C. § 2244(d)(1)(A)-(D).

A properly filed pending "application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" will toll the statute of limitations. 28 U.S.C. § 2244(d)(2).

Claims One through Three, Claim Five, and Claim Seven of Manning's petition all fall under Subsection (d)(1)(A) of the rule because they are not dependent upon the removal of a State-imposed impediment, they are not based on a newly created right, and they are not dependent upon a factual predicate that could not have been discovered.  Therefore, the statute of limitations began to run for those claims on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

The Buffalo County District Court sentenced Manning on August 19, 2005.  He filed a timely appeal to the Nebraska Court of Appeals on September 16, 2005.  However, Manning voluntarily dismissed the appeal on December 19, 2005.  There was no further direct review of the case.  Thus, the statute of limitations began to run on December 19, 2005, the conclusion of direct review.

6

Manning did file two motions for post-conviction relief, however. Those motions would toll the statute of limitations under 28 U.S.C. § 2244(d)(2), if they were filed during the running of the statute of limitations. Manning did not file his first motion for post-conviction relief until July 30, 2009, more than three and a half years after the statute of limitations began to run. The first motion for post-conviction relief had no effect on the relevant statute of limitations in this § 2254 habeas corpus case because Manning filed the first motion for post-conviction relief after the statute of limitations ran. Therefore, the court finds Claims One, Two, Three, Five, and Seven are all time barred and the court dismisses those claims.

B. CLAIMS FOUR AND SIX

Claim Four and Claim Six of the petition involve Manning's acquisition of allegedly exculpatory evidence not made available at the time of his plea bargain. The applicable subsection for determining when the one-year statute of limitations begins to run is 28 U.S.C. § 2244(d)(1)(D). That subsection states that the statute of limitations begins to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

Manning alleges the County Attorney in his original case had exculpatory evidence that would have put Manning in a better position to explore plea negotiations, but the County Attorney did not produce that evidence. Manning claims that he learned of evidence that suggested a conspiracy to intimidate witnesses in the case against Jim Haga.[3] If that evidence was in fact learned in between July 2009 and January of 2011, as Manning claims, then Manning's motions for post-conviction relief would toll the

---

[3] *See supra*, note 1 and accompanying text.

7

statute of limitations and Claims Four and Six would be timely. 28 U.S.C. § 2244(d)(1), (2).

The allegedly exculpatory evidence consisted of evidence that other individuals threatened Ginger Axtell in an attempt to prevent her from testifying against Jim Haga in his child molestation case.  Specifically, Ms. Axtell had two men approach her home asking about the Hagas, and later received a threatening letter in the mail describing her involvement with the Haga trial.  Manning contends that the State withheld this information from Manning and that the evidence tends to show that he was part of a conspiracy to intimidate witnesses in Jim Haga's trial for child molestation.  In Manning's opinion, the evidence of a conspiracy shows that Manning was not guilty of attempted murder because he only was attempting to intimidate witnesses.

However, Manning overlooks the fact that the evidence supporting the conviction of attempted murder is overwhelming and fails to specify how this evidence would have been exculpatory relating to the charges on which he was convicted.  To the contrary, the evidence in the case against Manning on the attempted murder charges was vast.  The evidence showed the Manning went to the Haga residence on Halloween night dressed as a surgeon and wielding a scalpel.  Manning then proceeded to attack both Deb Haga and her daughter with the scalpel.  Manning cut the necks and faces of both of the victims, and only narrowly missed cutting major veins and arteries.  Manning only ceased his attack when the Hagas' daughter was able to stab Manning with a knife and remove Manning's surgical mask, revealing his true identity.

Any evidence allegedly withheld from Manning about other individuals contacting Ginger Axtell would, at very best, independently show that there was a possible

8

conspiracy to intimidate witnesses. The evidence would have no bearing on the attempted murder charges brought against Manning.

Claim Four alleges that the State of Nebraska denied Manning due process of law and the right to confront witnesses because he was denied access to the exculpatory evidence. Because the court finds that the evidence is not exculpatory, the court finds Claim Four is without merit and dismisses the claim. Claim Six alleges that Manning was not made aware of information, the alleged exculpatory evidence, which should have been added to his presentence investigative report. Because the evidence has no bearing on the charges of attempted murder, the court finds that Claim Six is also without merit and dismisses the claim.

THEREFORE, IT IS ORDERED that the petitioner's Petition for Writ of Habeas Corpus, Filing No. 1, is denied.

Dated this 25th day of March, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge